Lois A. JOHNSON, et al., Appellants,

v.

STATE of Minnesota, Respondent.

No. C3–91–893.

Court of Appeals of Minnesota.

Dec. 17, 1991.

Review Denied Feb. 27, 1992.

David Stowman, Detroit Lakes, for appellants.

Hubert H. Humphrey, III, Atty. Gen., James S. Alexander, Spec. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by KLAPHAKE, P.J., and RANDALL, and CRIPPEN, JJ.

## OPINION

RANDALL, Judge.

Lois Johnson and husband (appellant) filed suit against the State of Minnesota alleging negligence for failing to repair a raised sidewalk joint on a sidewalk leading to a travel information center located at a highway rest area. The trial court granted summary judgment based upon governmental immunity under Minn.Stat. § 3.736, subd. 3(h) (1990) and procedural grounds. The procedural grounds were appellants' failure to file a statement of disputed facts as required by Rule 15, Special Rules of Court, Seventh Judicial District.

## FACTS

On February 9, 1989, appellant stopped at the Moorhead Travel Information Center located at a rest area east of Moorhead on Interstate 94. The Minnesota Office of Tourism operates the travel information center and the Minnesota Department of Transportation maintains the building and grounds. Appellant entered the office, picked up two maps, and left by the same door. On her way out, she tripped over a raised sidewalk joint. She did not look down as she was walking over the joint. Estimates on the height of the rise range from less than an inch to an inch and one-

half. Appellant severely injured her wrist in the fall.

State employees knew of the raised sidewalk joint. The sidewalk had heaved in the past in various places. The usual repair was to put an asphalt bituminous patch over the joint, place a mat over the patch, and post warning signs. Employees had looked at this particular joint a week to ten days before the accident. No precautions were taken at that time and no warnings were posted. The joint was not patched then because the employees thought the rise of the joint was not high enough to hold the patch. The raised joint was patched after the accident.

## ISSUES

1. Did the trial court err by granting summary judgment on the issue of negligence?

2. Does the governmental immunity statute violate the Minnesota constitution?

## ANALYSIS

### I.

*Summary Judgment*

Appellant did not comply with Rule 15, Special Rules of Court, Seventh Judicial District. Rule 15(2)(b) requires responsive documents to be filed at least nine days prior to the hearing. Appellant did not respond to the summary judgment motion until the day of the hearing. In addition, appellant failed to provide the statement required by Rule 15(2)(c). This rule requires responses in opposition to a motion for summary judgment to contain a statement of disputed facts. The state complied with the rule requiring their motion for summary judgment to contain a statement of facts as to which there is no genuine issue.

 A party opposing a summary judgment motion must present facts showing there is a genuine issue for trial.

> When a motion for summary judgment is made and supported as provided in Rule 56, an adverse party may not rest upon the mere averments or denials of the adverse party's pleadings but must present specific facts showing that there is a genuine issue for trial.

Minn.R.Civ.P. 56.05. Review of an appeal from summary judgment requires a determination of whether there are any genuine issues of material fact and whether the trial court erred in applying the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). The trial court is not to decide factual issues but determine whether any fact issues exist. *Moe v. Kilde,* 419 N.W.2d 820, 821 (Minn. App.1988). The facts of this incident are generally not disputed. The application of the law to these facts is at issue. We find the trial court did not err in its application of the law to these facts.

 Appellant contends the governmental immunity statute does not apply to a travel information center located at a state rest area. We disagree. Minn.Stat. § 3.736, subd. 3(h) (1990) provides:

> [the state is not liable for] a loss incurred by a *user* arising from the construction, operation, or maintenance of the *outdoor recreation system, as defined in section 86A.04,* * * * except that the state is liable for conduct that would entitle a trespasser to damages against a private person.

(Emphasis added.) Appellant contends she was not a user of the outdoor recreational system. However, Minn.Stat. § 86A.04 (1990) defines the outdoor recreational system to include:

> *state rest areas,* which include all facilities established by the commissioner of transportation for the *safety, rest, comfort and use* of the highway traveler, and shall include all existing facilities designated as rest areas and waysides by the commissioner of transportation.

(Emphasis added.) The purpose of a state rest area is

> to promote a safe, pleasurable, and *informative* travel experience along Minnesota highways by providing areas and facilities at reasonable intervals for *information,* emergencies, or the rest and comfort of travelers.

Minn.Stat. § 86A.05, subd. 12(a) (1990) (emphasis added).

Appellant attempts to distinguish the travel information center from the rest area since she stopped at the rest area only to visit the travel information center to pick up maps. The rest area is maintained by the Department of Transportation, while the travel information center is operated by the Office of Tourism. The Office of Tourism is not mentioned in the statute. Therefore, appellant contends the travel information center is not part of the outdoor recreational system. We disagree. Rest areas are defined as part of the outdoor recreational system. Minn.Stat. § 86A.04. Part of the statutory purpose of a rest area is to provide information. Minn.Stat. § 86A.05, subd. 12(a). Operation of the travel information center by the Office of Tourism does not remove it from the definition of the outdoor recreation system. Minn.Stat. § 86A.05, subd. 12(c) (1990) provides:

> Rest areas shall be administered by the *commissioner of transportation in cooperation with other agencies* as appropriate in a manner which is consistent with the purposes of this subdivision. State rest areas may be managed to provide parking, resting, restroom, picnicking, orientation, *travel information,* and other facilities for the convenience of the traveling public.

(Emphasis added.)

Governmental immunity under Minn. Stat. § 3.736, subd. 3(h) applies to injuries suffered by visitors to travel information centers. Even assuming governmental immunity, the state is still liable if it engages in conduct "that would entitle a trespasser to damages against a private person." Minn.Stat. § 3.736, subd. 3(h). Appellant argues a travel information center should be distinguished from the rest of the outdoor recreation system since it is designed to accommodate the public, is handicapped-accessible, and the public is invited to do business there. Appellant correctly points out that she was not a trespasser, but was a member of the public, invited and encouraged to visit the office. Appellant's argument is misplaced. First, the statute does not prohibit trespassers from recovering

against the state. Appellant does not have to distinguish herself from a trespasser to have a viable claim. Both invitees and trespassers do, *if* the requisite threshold is met. The statute, using the term "trespasser," merely defines the level of duty owed by the state to visitors to the outdoor recreation area. It does not define who can and who cannot be plaintiffs. Appellant is in the pool of potential plaintiffs. But the state gets the benefit of the low burden that a landowner owes a trespasser as opposed to the higher burden a landowner owes licensees and invitees. Minnesota has abolished the distinction between the duty landowners owe to licensees and invitees, but still distinguishes between trespassers and other entrants. *Peterson v. Balach,* 294 Minn. 161, 164–65, 199 N.W.2d 639, 642 (1972); *Watters v. Buckbee Mears Co.,* 354 N.W.2d 848, 850 (Minn. App.1984).

Here, the duty established by statute is that which a landowner owes a trespasser. This duty is defined by the Restatement (Second) of Torts § 335 (1965) which provides:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of land, is subject to liability for bodily harm caused to them by an artificial condition on the land if
>
> (a) the condition
>> (i) is one which the possessor has created or maintains and
>> (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and
>> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
>
> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

*Watters,* 354 N.W.2d at 850 (citing *Hanson v. Bailey,* 249 Minn. 495, 499–500, 83 N.W.2d 252, 257 (1957)).

Each of the Restatement's four requirements must be met for the state to be held liable. *Cobb v. State,* 441 N.W.2d 839, 841

(Minn.App.1989). Two requirements were met. The sidewalk is an artificial condition created by the state and the state did fail to warn visitors of the raised joint in the sidewalk. However, the state must also have had knowledge the sidewalk was likely to cause death or serious bodily harm and the sidewalk must have been a concealed danger. *Id.*

■ Appellant contends there is an issue of fact in determining whether the sidewalk was a concealed danger which was likely to cause death or serious bodily harm. We find no genuine issue of material fact exists in determining whether the requirements were met even while viewing the evidence in the light most favorable to appellant. *See Henry v. State,* 406 N.W.2d 608 (Minn.App.1987), *pet. for rev. denied* (Minn. Aug. 12, 1987).

■ The state knew of the condition of the sidewalk. The sidewalk was not in a condition *likely* to cause death or serious bodily harm. Conditions found to satisfy this requirement generally have inherently dangerous propensities, such as a high voltage electrical wire. *See* Restatement (Second) of Torts § 335 (1965) (illustration). The Restatement requires the condition to be likely to cause serious bodily harm, not that serious bodily harm "might" actually result. The injury suffered does not define the requirement. Otherwise, any artificial condition "could be" likely to cause death or serious bodily harm under the right circumstances. The remote possibility that death or serious bodily harm could result any time a person falls does not make a raised sidewalk joint rise to the level of an inherently dangerous condition. The trial court properly found as a matter of law that the raised sidewalk was not likely to cause death or serious bodily harm.

■ In addition, the sidewalk was not a concealed danger. The "test is not whether the injured party saw the danger, but whether it was in fact visible." *Munoz v. Applebaum's Food Market, Inc.,* 293 Minn. 433, 434, 196 N.W.2d 921, 922 (1972) (test for higher, invitee level of duty). When a brief inspection would have revealed the condition, it is not concealed. *Watters,* 354

N.W.2d at 851. While the state did not call attention to the raised joint by a posted warning, it was not concealed. Appellant has not raised any facts to the contrary, and admits not looking down as she walked over the sidewalk joint. The trial court properly found the raised sidewalk joint was not a concealed condition.

II.

*Constitutionality*

■ Appellant contends the governmental immunity in Minn.Stat. § 3.736, subd. 3(h) violates the Minnesota constitution. Minn. Const. art. I, § 8 provides:

> Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character, and to obtain justice freely and without purchase, completely and without denial, promptly and without delay, conformable to the laws.

Appellant raised this argument for the first time at the summary judgment hearing. Rule 15(2)(b), Special Rules of Court, Seventh Judicial District, requires responsive documents to be filed at least nine days before the hearing. Appellant's memorandum raising this issue was not filed until the day of the hearing and the trial court did not rule on this issue. Issues may not be raised for the first time on appeal. *Lienhard v. State,* 431 N.W.2d 861, 866 (Minn.1988); *Ukkonen v. City of Minneapolis,* 280 Minn. 494, 501, 160 N.W.2d 249, 253 (1968).

We note, however, that the constitutionality of governmental immunity has been tested. *Green–Glo Turf Farms, Inc. v. State,* 347 N.W.2d 491, 494 (Minn.1984) (Minn.Stat. § 3.736, subd. 3(h) (1982) does not violate equal protection clause of United States Constitution under rational basis test).

■ In addition, the purpose of article I, section 8 of the Minnesota Constitution is to preserve remedies under common law. *Hickman v. Group Health Plan, Inc.,* 396 N.W.2d 10, 14 (Minn.1986). At common law, the state could not be sued. *See Niet-*

*ing v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975) (abolished sovereign immunity). Therefore, the governmental immunity statute does not violate Minn. Const. art. I. § 8. *See Mickelsen, The Use and Interpretation of Article I, Section 8 of the Minnesota Constitution 1861–1984,* 10 Wm.Mitchell L.Rev. 667 (1984).

## DECISION

Governmental immunity under Minn. Stat. § 3.736, subd. 3(h) (1990) applies to negligence claims arising out of the use of a Minnesota travel information center located in a Minnesota rest area.

The trial court properly granted summary judgment for the state on the grounds of governmental immunity since there is no evidence the state had knowledge the sidewalk was likely to cause death or serious bodily injury, and the sidewalk was not a concealed danger.

Governmental immunity under Minn. Stat. § 3.736, subd. 3(h) (1990) is constitutional.

Affirmed.

CRIPPEN, Judge, (dissenting).

I agree that the case is governed by the immunity statute and the standard of care for a landowner toward a trespasser. However, I view the negligence law issue differently than my colleagues on the panel, and would remand the case for trial proceedings on issues of fact.

1. We cannot disregard danger as a matter of law by comparing a condition with one which has "inherently dangerous propensities, such as high voltage electrical wire." The illustration of a high voltage wire is only one example of a case where a jury must determine the facts in order to apply standards formulated in the Restatement. Restatement (Second) of Torts § 335 (1965). We should take into account, for example, appellate approval of determinations on liability to a trespasser arising out of obstacles on a closed highway. *Hanson v. Bailey*, 249 Minn. 495, 83 N.W.2d 252 (1957); *Wood v. State Dep't of*

*Highways*, 295 So.2d 78 (La.Ct.App.), *writ denied*, 295 So.2d 446 (La.1974).

2. Little is gained by recognizing that by over-enlarging the prospects for recovery, "any artificial condition" could be the likely cause of death or serious bodily harm under the right circumstances. We cannot preclude a finding of danger under the Restatement standard by observing as a matter of policy that some applications may be questionable.

3. The serious harm standard pronounced in the Restatement has two components. First, the standard raises a question on the likelihood that harm will occur. Second, the standard refers to the seriousness of the likely harm. In the circumstances of this case, because the facilities are heavily used by the public there is a substantially greater risk of harm from a raised sidewalk joint. Serious harm may result from this danger. Upon a surprise fall on concrete, fractures are likely, especially for older citizens. Significantly, any fracture constitutes "substantial bodily harm" for purposes of the Minnesota Criminal Code. Minn.Stat. § 609.02, subd. 7a (1990). Application of the standard to the facts here begs for the judgment of a factfinder.

4. It also unduly restricts governing standards to conclude as a matter of law that all conditions on the ground will likely be discovered by a person walking on the site. There is a fact issue on discoverability of a hazard where evidence shows a sidewalk joint that is indistinguishable from the surrounding walkway and located on a heavily used public walkway which pedestrians will assume is well maintained.

In sum, appellants have demonstrated issues that cannot be determined as a matter of law. I respectfully dissent.